1 .PETERS, J.
This litigation began with the filing of a petition to have A.P., a juvenile, adjudi *98 cated a juvenile delinquent. After a hearing, the trial court adjudicated A.P. as a juvenile delinquent. The trial court then committed A.P. to the custody of the Department of Corrections, Office of Youth Services, for a period of six months. A.P. now appeals her adjudication as a juvenile delinquent, asserting that the state faded to produce sufficient evidence to support the trial court’s determination.
In its petition, the state alleged that on January 29, 2002, A.P. committed the offense of theft of goods, a violation of La. R.S. 14:67.10. At trial, the state presented evidence to the effect that the theft occurred at the New Iberia, Louisiana K-Mart store. The principal evidence directly connecting A.P. to the theft was the testimony of Patricia Swebek, a K-Mart employee.
Ms. Swebek testified that, while working at K-Mart on January 29, 2002, she observed A.P. and another female juvenile enter the electronics department of the store, select a number of CDs from the display rack, open two of the cases holding the CDs, and conceal the CDs. She then observed the two females discard the empty cases, select a hair kit, proceed to the cashier, and pay for the hair kit only.
Ms. Swebek then approached the two female juveniles and confronted them concerning the CDs. According to Ms. Swe-bek, the two juveniles were initially belligerent and began using profanity. She instructed them to follow her to the store’s loss prevention office, and they initially complied. However, before arriving at the office, the juveniles turned and exited the store. Ms. Swebek then contacted the New Iberia City Police.
The two juveniles were taken into police custody a short time later. Upon being questioned by Officer James Patton, one of the officers who responded to Ms. | ?,Swebek’s call for assistance, the other juvenile informed him that they had deposited the CDs in the infant department of the K-Mart store. The CDs were retrieved from the place described by the other juvenile and seized as evidence. According to Officer Patton, A.P. was uncooperative during his interrogation.
A.P. testified in her own defense that she did not take the CDs from the store, although she admitted taking two from the display rack. According to A.P., the other juvenile also removed one from the rack and they then went to the infant’s department where the other juvenile took the plastic wrapper off the CDs. A.P. admitted that the other juvenile handed each CD to her after removing the plastic wrapper. However, she acknowledged that another lady had observed the other juvenile’s and her actions, and she stated that she gave the three CDs back to the other juvenile and told her to “[g]o put that down.” A.P. stated that she began walking away. When cross-examined by the state, A.P. admitted that she and the other juvenile intended to steal the three CDs and changed their minds only when they thought they were being observed by store personnel. According to A.P., it was the other juvenile who “stashed” the CDs in the infant section of the store.
While the CDs themselves never left the store, they were removed from their wrappers and the cases in which they came were discarded. Ms. Swebek testified that merchandise in that condition was considered by K-Mart to be damaged and, therefore, not sellable.
OPINION
The offense of theft of goods is committed through the “misappropriation or taking of anything of value which is held for sale by a merchant, either without the consent of the merchant to the mis *99 appropriation or taking, or by means of fraudulent conduct, practices, or representations.” La.R.S. 14:67.10(A). Wben committed by Ran adult, the offense can either be a felony or misdemeanor, depending on the value of the thing taken. La.R.S. 14:67.10(B). Thus, the value of the goods taken is an integral requirement of a theft of goods charge against an adult. It affects whether the offense is a misdemeanor or felony and, thus, whether or not a defendant is entitled to a jury trial. Additionally, it determines whether a defendant is entitled to an appeal of his conviction or only to an application for supervisory writs.
In this case, the petition failed to establish the value of the goods taken. Additionally, the record contains no evidence of their value. Thus, this failure caused the bill of information to be invalid, and we recognize this as an error patent.
The fact that A.P. is a juvenile and not entitled to a jury trial is not a distinction that makes a difference in our analysis of the matter now before us. The disposition to which a juvenile might be exposed also depends upon whether the act charged is a felony grade act. See La.Ch.Code arts. 897-900. The state’s failure to assert the grade of the offense charged is fatal to the adjudication process. Therefore, we reverse the adjudication of delinquency and order of commitment, discharge the defendant, and dismiss the state’s petition.
DISPOSITION
The adjudication of A.P. as a juvenile delinquent and her commitment to the Department of Corrections, Office of Youth Services, is reversed. A.P. is discharged, and the state’s petition is dismissed.
REVERSED.